STATE EX REL. HARRY ET AL. *v.* ICE ET AL.

[No. 26,001. Filed June 28, 1934.]

*Evans & DeWitt,* for appellants.

*Paul Brown,* for appellee.

FANSLER, J.—Relators filed an information in *quo warranto* charging that appellees were holding the offices of town trustees of the town of Mt. Summit, pursuant to the result of an election which is asserted to have been illegal and void. The trial court sustained a demurrer to the complaint or information, and the only questions presented involve the correctness of that ruling.

It is alleged that neither primary election nor party conventions were held for the purpose of nominating candidates for town offices, and that no candidates were nominated by legal petition; that but one petition for the nomination of candidates for

members of the board of town trustees was filed with the town clerk; that by that petition it was sought to place appellees in nomination and procure their names to be printed upon the ballot; that the petition was filed within the time provided by statute, and that it contained the requisite number of names, but that it was not accompanied by a certificate or jurat of an officer authorized to take acknowledgments, evidencing the fact that the signatures had been acknowledged. It appears that after the petition was filed, and after the time had expired for filing petitions, a certificate was filed showing the acknowledgment of the signatures of the signers. It is alleged that the petition did not show on its face that the petitioners were electors qualified to vote for the persons petitioned for, and that the post-office address of the petitioners was not designated. The petition recites that the undersigned petitioners are residents of the town of Mt. Summit, which is a sufficient description of their residence and postoffice address. The statute does not require that the petition shall show that petitioners are electors qualified to vote for the persons petitioned for. It is merely required that they have such qualifications, and it will be presumed in the absence of a showing or allegation to the contrary that they were so qualified, and that the election officers ascertained such to be the fact.

It appears that on the 25th day of October, 1929, and after the statutory time for filing petitions had passed, and before the ballots were printed, five of the petitioners filed a new petition asking that their names be taken from the nominating petition, and that no election be held for the offices of town trustees, and that these withdrawals reduced the petitioners below the number required by statute. It is alleged that relators were the duly elected and qualified trustees of the town at the time the petitions were filed, and that in view of

the facts above set out they as such trustees held that no legal petition nominating candidates for the offices of town trustees was on file; that the time had passed for the filing of such nominating petitions, and that they refused to appoint an election inspector for the reason that no legal election could be held. The town clerk appointed election commissioners to serve with him, and they prepared ballots upon which the names of appellees were printed as candidates for the offices of town trustees. On the morning of election day an inspector was appointed by the bystanders at the polls; an election was had, and the election commissioners declared appellees elected town trustees. It is alleged that appellees are asserting title to such offices and attempting to act as such officers; that, notwithstanding relators, acting as the board of town trustees, had refused to appoint an election inspector, no person took any action to compel them to appoint an election inspector. There is no allegation of fraud, or that the election and counting of votes had been otherwise than fairly and honestly conducted, or that the election officers who acted were not qualified.

Relators were holding offices as town trustees. Had they desired to continue they might have caused a petition to be filed nominating them to succeed themselves, if they could have procured the signatures of twenty qualified petitioners. In the event no election was held, they would continue in office until the next election. They seem to have made no effort to have themselves nominated and their names submitted to the voters at the election, but now assert their right to continue in office because no legal election was held.

They assert that even though the petition nominating appellees was valid and sufficient when filed, it became ineffective upon five of the petitioners asking that their names be withdrawn and that no election be had. This petition for withdrawal

was filed after the time for filing petitions, and, if relators' contention can be upheld, had the result of preventing the only persons who had been nominated from being voted for or elected to the office, thus insuring that relators would hold over. If nominating petitioners are permitted to withdraw their names after opportunity for supplying additional names, or filing new petitions, has passed, a very patent door to chicanery and fraud upon the voters and the community is provided. Good-faith candidates for whom great numbers of electors might desire to cast their ballots might be cheated and defrauded out of the right to have their names upon the ballots by bad-faith pretended supporters procuring the opportunity to sign their petitions, and afterwards withdrawing their names. In support of their contention, relators cite the cases of *Hord, ex rel.* v. *Elliott* (1870), 33 Ind. 220; *Noble* v. *City of Vincennes* (1873), 42 Ind. 125; and *Current* v. *Current* (1920), 72 Ind. App. 363, 125 N. E. 779, which lay down the general rule that persons signing a petition have the right to withdraw their names therefrom before the tribunal created by law to receive and consider such petition has acted thereon. But the ruling was not intended to apply to petitions such as we have under consideration. The statute requires that petitions for nomination be filed not less than fifteen days before the election. There is also a statutory provision that no person nominated as a candidate for any office may withdraw or resign within that fifteen-day period. It is clear that, if the nominating petition contained less names than required by statute, the additional names could not be added after the last day for filing.

In *Remster* v. *Sullivan* (1905), 36 Ind. App. 385, 75 N. E. 860, it was held that where the petition for nomination did not sufficiently indicate the office for which the nomination was made, it could not be thereafter amended in this substantial respect, since its

status was fixed at the end of the statutory period for filing, and that thereafter it became *functus officio*.

The purpose of the statute can only be accomplished by requiring that names may not be added to or taken from nominating petitions after the expiration of the time for filing.

Section 7466, Burns 1926, §29-1003, Burns 1933, §7110, Baldwin's 1934, which provides for nomination by petition, does not require that the signatures of the petitioners be acknowledged, but it does provide that the certificate of nomination by convention or primary election shall be in writing, signed by the presiding officer and secretary of the convention, or chairman and secretary of the party committee, and that their signatures shall be acknowledged.

In the case of *Jones* v. *State ex rel. Wilson* (1899), 153 Ind. 440, 448, 55 N. E. 229, an action brought after the election, it appears that the contestor for the office was nominated by a party convention. Complaint was made because the certificate of the convention officers was not acknowledged as provided by statute. The court said:

> "Complaint is made of the certificate; not that it misstated or that it inadequately stated the facts, but because the evidence of its verity was not of the class provided by law. The evident purpose of the acknowledgement of the certificate before an officer is to authenticate the paper before the board of election commissioners.
>
> "The town clerk, acting as such board, might doubtless have refused to accept the certificate until rendered in due form, but, having accepted it without objection, and as satisfactory to him, the purpose of the law was fulfilled. It enabled him to place upon the official ballot the names of the several candidates that had actually been nominated, and which of right should have been placed there; and, the correct result having been reached, the form of procedure becomes unimportant."

Section 7467, Burns 1926, §29-1004, Burns 1933, §7112, Baldwin's 1934, was enacted in 1905, and provides that:

". . . no petition for nomination shall be effectual to authorize the name petitioned for to appear upon the official ballot unless the signatures of such petition to the number required by law shall be duly acknowledged before some officer authorized to take acknowledgments."

The case of *Remster* v. *Sullivan, supra,* was an action brought before the election to enjoin the printing of the names of certain candidates upon the ballot, and among the reasons assigned was a failure to acknowledge signatures on the petition. The case was decided upon other grounds, and it is said in the opinion: "We therefore decline to express an opinion as to the necessity of the acknowledgment of such petitions."

It is well settled that provisions of the election law viewed as mandatory, if enforcement is sought before election in a direct proceeding, will be held directory only in a proceeding after the election unless an essential element of the election is affected, or there is an express declaration in the statute that the act is essential to a valid election, or that its omission will render the election void. The purpose of the law and the efforts of the court are to secure to the elector an opportunity to freely and fairly cast his ballot, and to uphold the will of the electorate and prevent disfranchisement. In the absence of fraud, actual or suggested, statutes will be liberally construed to accomplish this purpose. *Jones* v. *State, ex rel. Wilson, supra; Blue* v. *Allee* (1916), 184 Ind. 302, 111 N. E. 185.

With this rule in mind, we consider §§7466 and 7467, *supra.* We have indicated above that the nominating petition was in all things sufficient under the statute. It is alleged that at the time of the filing of the petition it had not been acknowl-

edged, but that a certificate evidencing acknowledgment was filed seven days later. The date upon which petitioners acknowledged the signatures is not shown. Evidently the evidence of acknowledgment was presented to the clerk and election commissioners in time to satisfy them of the fact before the ballots were prepared.

And in this case it does not appear that the rights of the voters, or of any other person, were injured or invaded by the irregularity. No other person attempted to procure his name to be printed on the ballot as a candidate for the office. Appellees were the only candidates, and the only ones complaining of injury are the relators, who did not seek return to the office which they were holding by submitting their names to the electors of the town, but who seek to retain office upon a technicality as against those who were voted for by the electors in an election which must have appeared in all things regular to the voters.

Relators are in no better position at best than if they also had filed a nominating petition, identical in all respects with that filed by appellees, and the names of relators and appellees had been printed on the ballots, and appellees had received a great majority of the votes cast. The very purpose of the law would be defeated by declaring the election void and continuing relators in office, notwithstanding the will of the majority expressed fairly and in good faith. When such an election is had the very object of all the election laws is accomplished, and in a case where but one list of candidates is submitted to the voters, and they are voted on, such an irregularity as we find here cannot be treated as essential to the validity of the election.

Relators, as trustees, failed and refused to appoint election commissioners, and upon their failure the clerk appointed commissioners to act with him. They followed the statutory procedure, and were at least *de facto* officers. In the case of *Jones* v.

*State, ex rel. Wilson, supra,* the town clerk alone acted as the board of election commissioners, and his right to do so, in the absence of the trustees performing their duty under the statute and appointing commissioners, was not questioned. The trustees also failed and refused to appoint an inspector, and contend that the only authority for the appointment of an election inspector by the bystanders is in a case where an inspector appointed by the proper officials fails to appear. There must be some remedy where the trustees fail to do their statutory duty in the appointment of election officials. Their failure cannot be permitted to defeat the right of the voters to have the election held. It is not contended that the inspector chosen by the bystanders at the polling place was otherwise disqualified, and he must be treated as a *de facto* officer.

The election that was held afforded the voters an opportunity to vote for the only candidates for town trustees who chose to have their names presented. Every voter had the opportunity of voting for them, and could have had the opportunity of voting for no one else since there was no effort to present the names of other candidates. There is no intimation of fraud, or even of irregularity, that affected the right of the qualified electors to cast their ballots, nor is any substantial reason suggested why appellees, the only candidates receiving any votes for the offices of trustees, should not be permitted to occupy the offices. Appellants' case rests entirely upon technical irregularities, not calculated in this case at least to affect the result of the election.

Judgment affirmed.