PARKER ET AL. *v*. SEWARD SCHOOL TOWNSHIP ET AL.

[No. 29,812. Filed June 23, 1959. Rehearing denied
September 29, 1959.]

*Widaman, Bowser and Widaman,* of Warsaw and *Stevens & Wampler,* of Plymouth, for appellants.

*Albert B. Chipman,* of Plymouth, for appellees.

*Rockhill, Vanderveer, Kennedy & Lee,* of Warsaw, *amici curiae.*

BOBBITT, J.—This case comes to us on petition to transfer from the Appellate Court under Acts 1933, ch. 151, §1, p. 800, being §4-215, Burns' 1946 Replacement. See: *Parker* v. *Seward School Township* (1958), 154 N. E. 2d 735, for opinion of the Appellate Court.

Appellants filed this suit to enjoin the Trustee, and Advisory Board of Seward School Township and of Seward Civil Township, and the County Auditor of Kosciusko County, Indiana, from proceeding further in the issuance of bonds to pay the cost of remodeling and improving a school building in such township, asserting that the number of remonstrators exceeded the number of petitioners, and because of this any bonds so issued would be illegal and void.

The sole question at issue in the trial court and the only one properly presented here on appeal is: Were there more remonstrators than there were petitioners?

At the request of plaintiffs-appellants, the trial

court made a special finding of facts. Those pertinent to the issues here may be summarized as follows:

(3) On April 23, 1955, a petition was filed with the Township Trustee praying that the Advisory Board and the Trustee authorize an issue of bonds for the purpose "of procuring funds to be applied on the cost of remodelling and improving the existing school building located in the incorporated Town of Burket, Seward Township, Kosciusko County, Indiana, and the construction and equipment of an addition thereto, to accomodate the pupils of school age residing within such School Township, . . . ."

A certificate of the County Auditor was attached to the petition certifying that "such petition was signed by Seven Hundred Forty-four (744) owners of taxable real estate in said School and Civil Townships."

(4) On April 23, 1955, written withdrawals from the petition were filed by One Hundred Twenty-two (122) signers who were owners of taxable real estate in the township.

(5) Thereafter, on April 28, 1955, a special meeting of the Advisory Board of the Township was called for the purpose of considering the sufficiency of the petition and withdrawals therefrom, and to determine whether an indispensable emergency and necessity existed for the providing of funds for the purposes set forth in the petition.

(6, 7, 8, 9) At the meeting on April 28, 1955, the Advisory Board found the petition to be sufficient and adopted a resolution accordingly. It also found that an indispensable necessity and an extraordinary emergency existed for the issuance of bonds of Seward School Township and Seward Civil Township, to provide funds

to pay the cost of the proposed work as requested in such petition and determined to issue such bonds, and adopted resolutions accordingly.

(10) Notice of the determination to issue the bonds was given, as provided by statute, the last publication being on May 12, 1955.

(16) Within 30 days after the publication of the notice of the determination to issue such bonds, a remonstrance against the issuance thereof was filed.

A certificate of the County Auditor was attached thereto certifying that such remonstrance was signed by Seven Hundred Eighteen (718) owners of taxable real estate within the Township. Also, during such 30 day period seventy (70) owners of taxable real estate within the Township filed written withdrawals from the remonstrance.

(17) A special meeting of the Advisory Board was held on June 9, 1955, to consider the remonstrance filed against the issuance of the bonds.

Because of the importance of Finding No. 19, it is set out verbatim herein and is as follows:

"19. At said special meeting of June 9, 1955, aforesaid, the Advisory Board considered the remonstrance against the issuance of said bonds and withdrawals from such remonstrance aforesaid, and found and determined that in addition to the Seventy (70) taxpayers who had filed withdrawals from the remonstrance as hereinbefore found, Eight (8) others had signed such remonstrance twice, and that Two Hundred Two (202) names of taxpayers appeared as signors [signers] of said remonstrance whose names had also appeared on the petition referred to in Finding 3 above and which had been counted as petitioners in the action of the Advisory Board in granting the petition at its special meeting of April 28, 1955, as set out in Finding 7, and the proceedings had consequent thereon as hereinbefore found, and that none of

said Two Hundred Two (202) persons had ever filed a withdrawal from or petition to withdraw their names from the original petition referred to in Finding 3; and it further found that after deducting from the number of taxpayers who had signed the original petition aforesaid the said withdrawals therefrom, and deducting from the number of taxpayers whose names appeared on said remonstrance the Two Hundred Two (202) names of persons who had signed both the original petition and the remonstrance without ever having withdrawn from the petition plus the Seventy (70) names of taxpayers who had filed withdrawals from said remonstrance, plus the Eight (8) names of taxpayers who had twice signed said remonstrance, there remained a greater number of names on said original petition, than on such remonstrance. And, thereupon, said Advisory Board found such remonstrance to be insufficient and denied the same, and all by resolution of said Board passed and adopted at said meeting."

Under the record here we accept the foregoing facts as correctly found. *Gross Income Tax Div.* v. *Surface Comb. Corp.* (1953), 232 Ind. 100, 107, 111 N. E. 2d 50.

The trial court found against the plaintiffs-appellants and for the defendants-appellees.

Appellees herein have proceeded under Acts 1945, ch. 5, §1, p. 9, being §64-312, Burns' 1951 Replacement, and Acts 1939, ch. 97, §1, p. 507, being §64-313, Burns' 1951 Replacement.

Section 64-313, *supra,* provides that no taxes shall be levied to meet the principal and interest of municipal bonds unless prior to the issuance of such bonds a petition or petitions shall be filed by at least fifty (50) owners of taxable real estate "in the municipal corporation desiring to issue such obligations praying for the issuance" thereof.

Such section also provides that within thirty (30) days after the publication of the notice of the determination to issue the bonds as provided in such section, remonstrances may be filed "by owners of taxable real estate in such municipal corporation greater in number than the number of petitioners, with the municipal body or officer with whom the petition or petitions were filed, which remonstrance is likewise duly verified and certified, praying that no such obligation be issued, then no such obligation shall be issued."

The section then provides that if the remonstrance prevails, no further petition for the issuance of such obligations shall be filed within a period of one (1) year after the filing of the remonstrance.

If the number of qualified remonstrators exceeds the number of qualified petitioners, then the officials of Seward Township (appellees) are without lawful authority to proceed with the issuance or sale of such bonds; *Wallace, Trustee* v. *Simpson* (1940), 108 Ind. App. 54, 59, 27 N. E. 2d 130; and the decision of the trial court is contrary to law.

The determinative issue here is whether or not, under the factual situation here presented, signers of the petition who later attempted to withdraw their names could legally do so, and whether the Two Hundred Two (202) persons who signed the petition but did not withdraw therefrom, could also legally sign the remonstrance.

"It is a general rule in this state that persons signing a petition have the right to withdraw their names therefrom before the tribunal created by law to receive and consider such petition has acted thereon. *Hord* v. *Elliott* (1870), 33 Ind. 220; *Noble* v. *City of Vincennes* (1873), 42

Ind. 125; *Black* v. *Campbell* (1887), 112 Ind. 122, 13 N. E. 409; *Ralston* v. *Beall* (1908), 171 Ind. 719, 30 N. E. 1095." *Current* v. *Current* (1920), 72 Ind. App. 363, 365, 125 N. E. 779. See also: *Carr et al.* v. *Boone et al.* (1886), 108 Ind. 241, 245, 246, 9 N. E. 110; *State* v. *Gerhardt* (1896), 145 Ind. 439, 473, 474, 44 N. E. 469, 33 L. R. A. 313; *State ex rel. Harry* v. *Ice* (1934), 207 Ind. 65, 69, 191 N. E. 155, 92 A. L. R. 1508; *Pullin et al.* v. *Arnold et al.* (1954), 234 Ind. 13, 16, 122 N. E. 2d 858; McQuillin, Munic. Corp., Vol. 13, §37.50, p. 184; Anno. 27 A. L. R. 2d 604-620.

We reaffirm this rule.

For the reasons which later appear, it is our opinion that "the determination to issue" the bonds is the action referred to in the rule above stated.

In *Ralston* v. *Beall* (1892), 171 Ind. 719, 30 N. E. 1095, this court was required to determine the right of petitioners to withdraw from a petition for the construction of a free gravel road under a statute[1] which provided that upon filing of a report of the viewers, "the commissioners shall, if in their opinion public utility requires it, enter upon the record an order that the improvement be made, . . ." It was there held (at page 722 of 171 Ind.) that names might be added to or withdrawn from the petition at any time before the Board made its finding, but after the finding had been made the right to withdraw names no longer existed.

See also: *Black et al.* v. *Campbell et al.* (1887), 112 Ind. 122, 13 N. E. 409.

The provisions of the statute with which we are here concerned are similar to those quoted above from §5091, R. S. 1881, *supra,* in that upon the filing of a

---

1. Acts 1877, pp. 82, 84, §5091, R. S. 1881.

petition, as therein provided, the proper body shall, if in its opinion sufficient necessity exists therefor, determine to issue the bonds as requested in the petition.

It seems to us that under the statute here,[2] the adoption of a resolution, finding that the petition was sufficient and determining to issue bonds, is as much an "action" upon the petition as was the finding of the Board of County Commissioners in *Ralston* v. *Beall, supra* (1892), 171 Ind. 719, 30 N. E. 1095.

The filing of the requisite petition under §64-313, *supra,* confers the jurisdiction and power upon the proper body to determine whether or not the bonds described in the petition shall be issued.

When the resolution determining to issue the bonds is adopted, every person owning taxable real estate in the municipality is then affected by the jurisdiction thus acquired; and after the issuing body has, by the adoption of a proper resolution, determined to issue the bonds, petitioners may not withdraw their names from the petition and thereby divest the issuing body of jurisdiction.

In the present case the Advisory Board at a special meeting on April 28, 1955, found the petition to be sufficient; that both a necessity and an emergency existed for the issuance of the bonds as requested in the petition; and determined to issue the same.

For the reasons above stated, petitioners could not withdraw their names from the petition herein after the adoption of such resolution (determining to issue the bonds) by the Advisory Board on April 28, 1955.

Since no action had been taken upon the petition on April 23, 1955, when the One Hundred Twenty-two (122) owners of taxable real estate in the township

---

2. Acts 1939, ch. 97, §1, p. 507, being §64-313, Burns' 1951 Replacement.

filed their written withdrawal from the petition, they could legally withdraw, and no error was committed by permitting them to do so.

We next consider the Two Hundred Two (202) petitioners who filed no withdrawal and whose names appeared both on the remonstrance and on the petition on June 9, 1955, when the remonstrance was considered by the Advisory Board.

This question was answered by this court in *Pullin et al.* v. *Arnold et al., supra* (1954), 234 Ind. 13, at page 16, 122 N. E. 2d 858, when, quoting from *Noble* v. *City of Vincennes* (1873), 42 Ind. 125, 130, we said:

" 'When a party who has signed a petition for the doing or granting of something afterwards signs a remonstrance against the doing or granting of what he has petitioned for, it would seem reasonable that the one should counteract and destroy the effect of the other, if the remonstrance is presented before action has been had in accordance with the petition.' "

It is clear from what has already been said hereinabove that the remonstrance in the case at bar was not filed before action had been taken on the petition. Hence, the signing of the remonstrance by these Two Hundred Two (202) petitioners, under the circumstances here, is illegal and of no force and effect, and their names must be counted as petitioners and not as remonstrators.

The Advisory Board here exercised its power to determine that such bonds be issued and to order their issuance at its meeting on April 28, 1955. The effect of a sufficient remonstrance under §64-313, *supra,* is to suspend the power to issue the bonds for a period of one year from the filing of such remonstrance. §64-313, *supra.*

The sole purpose of the meeting of the Advisory Board held on June 9, 1955, was to consider the sufficiency of the remonstrance.

Since the seventy (70) taxpayers who filed withdrawals from the remonstrance did so before its sufficiency was considered by the Advisory Board on June 9, 1955, their withdrawal was valid, and the Board properly excluded them when considering the remonstrance. *Lee* v. *Shull* (1909), 172 Ind. 309, 312, 88 N. E. 521; *Sauntman* v. *Maxwell* (1900), 154 Ind. 114, 124, 54 N. E. 397; *Sutherland et al.* v. *McKinney* (1897), 146 Ind. 611, 612, 45 N. E. 1048.

It was also proper to delete from the remonstrance the names of the Two Hundred Two (202) persons who had signed the petition but had failed to effect a timely withdrawal therefrom. Since eight persons had signed the remonstrance twice, this error was properly corrected by deducting an additional eight persons from the total appearing on the remonstrance.

It appears that the original petition was signed by Seven Hundred Forty-four (744) qualified persons. Deleting therefrom the One Hundred Twenty-two (122) who timely filed their written withdrawals, there remained a total of Six Hundred Twenty-two (622) qualified petitioners whose names were affixed to the petition on April 28, 1955, when it was found to be sufficient and the Advisory Board determined to issue the bonds.

The original remonstrance contained Seven Hunddred Eighteen (718) signatures. Of this number Seventy (70) remonstrators had filed their timely withdrawal. Deleting these names leaves a total of Six Hundred Forty-eight (648), from which must be deducted the Two Hundred Two (202) signers who

failed to effectuate their withdrawal from the petition, and the eight (8) persons who had signed the remonstrance twice, leaving a net total of Four Hundred Thirty-eight (438) qualified remonstrators.

It is thus apparent that there were more qualified petitioners than there were proper remonstrators. Hence, the trial court did not err in sustaining the finding of the Advisory Board, and its judgment is not contrary to law.

Judgment affirmed.

Arterburn, Jackson and Landis, JJ., concur.

Achor, C. J., dissents with opinion.

## DISSENTING OPINION

ACHOR, C. J.—This is an action to enjoin the issuance of bonds by a township under a special statute. §64-312 (d) and §64-313, Burns' 1951 Repl. The proceedings as prescribed by the statute, are as follows: (1) the action is initiated on petition of 50 or more owners of taxable property, which shall be laid before the body authorized to issue such bonds; (2) if said body determine to issue such bonds for the purpose specified, a 30 day notice shall be given, during which remonstrances may be filed with said body, and (3) if remonstrances in number greater than the petitioners shall be filed "then no such obligation shall be issued."

Briefly the facts which gave rise to the controversy in this case are as follows: 1. The petition was signed by 744 persons, 122 of whom withdrew from the petition before the petition was submitted to the appellee tribunal. This left a total of 622 petitioners on the petition at the time it was submitted to appellees for action. 2. Thereupon the appellees entered a determination that the bonds issue as petitioned and ordered the required notice by publication for

the filing of remonstrances to such action. 3. During the period prescribed for remonstrance a total of 718 owners of real estate signed and filed a remonstrance. Of these, however, 70 withdrew their names during the 30 day period, leaving a total of 648 taxpayers who timely filed their remonstrance to the action, as compared with 622 petitioners. 4. It further appeared that 202 persons, who had not withdrawn from either, had signed both the petition and the remonstrance.

The specific question presented for our determination is whether the 202 persons above referred to should be counted as petitioners or remonstrators or whether they should be considered for either or both purposes. It is with regard to the legal effect of these names upon the proceedings that I differ with the majority opinion.

As stated in the majority opinion, "The sole question at issue in the trial court and the only one properly presented here on appeal is: Were there more remonstrators than there were petitioners?"

There is no dispute that where a prescribed number of petitioners is necessary to vest a tribunal with jurisdiction to act, persons signing such a petition may not withdraw their names therefrom after the tribunal created by the law to receive and consider such petition has acted thereon.[1] This rule is necessary because of the fact that petitioners should not, by decreasing their number, deny the tribunal jurisdiction to perform the action which it has al-

1. *Current* v. *Current* (1920), 72 Ind. App. 363, 365, 125 N. E. 779; *Carr et al.* v. *Boone et al.* (1886), 108 Ind. 241, 245, 9 N. E. 110; *State* v. *Gerhardt* (1896), 145 Ind. 439, 473, 474, 44 N. E. 469, 33 L. R. A. 313; *State ex rel. Harry* v. *Ice* (1934), 207 Ind. 65, 69, 191 N. E. 155, 92 A. L. R. 1508; *Pullin et al.* v. *Arnold et al.* (1954), 234 Ind. 13, 16, 122 N. E. 2d 858.

ready taken. However, it is the position of the appellees that a person signing the petition could not remonstrate to the proposed action unless he had first withdrawn from the petition and that such withdrawal could be made only "before any action had been taken on the petition." It is my opinion that this position is neither supported by reason or by the reported decisions of this court.

Where, as in the present proceedings, the ultimate action (the issuance of bonds) as proposed by the petition and approved by the appellees is by statute expressly made to depend upon *the will of the majority of taxpayers* as numerically expressed by the petition for and remonstrance against the proposed action, then it seems to reasonably follow that the appellee tribunal in determining the will of the majority must consider the names of *all petitioners* and *all remonstrators* to the action as they appear at the time of such enumeration.

Where the name of a taxpayer appears both as a petitioner and as a remonstrator it could be argued with reason that the last expression of the will of the taxpayers, as expressed by the remonstrance should prevail, since that instrument would ordinarily express the taxpayer's final and more seasoned judgment regarding the proposed action. However, long established precedent of this court seems to be that under such circumstances the effect of the petition and the remonstrance is merely to counteract each other. In other words the name of the taxpayer will be considered as a petitioner and also as a remonstrator.

In the early case of *Noble et al.* v. *City of Vincennes* (1873), 42 Ind. 125, this court stated the rule as follows:

"When a party who has signed a petition for the doing or granting of something afterward signs a remonstrance against the doing or granting of what he has petitioned for, it would seem reasonable that the one should counteract and destroy the effect of the other, if the remonstrance is presented before action has been had in accordance with the petition." (Page 130.)

Concerning the decisions of this court appellees rely upon the last clause quoted from the above case and assert that because action had "been had in accordance with the petition" therefore the right of a petitioner either to withdraw from the petition or to remonstrate to the action no longer existed. The case of *Noble et al.* v. *City of Vincennes, supra,* does not sustain this position. In that case the Vincennes City Council on petition of its taxpayers authorized a donation of $100,000 to the Vincennes and Cairo Railroad Company. The case holds that, notwithstanding the fact that the council had authorized the donation, taxpayers could both withdraw from the petition and join in the remonstrance against the authorized donation until such time as some action binding upon the city had been taken. In that case this court stated:

"There would seem to be nothing irrevocable in the signing of a petition. . . . (Page 130.)

"Was the remonstrance in time to counteract the effect of the petition? We think it was. . . . In our opinion, *there had not been, at that time, any binding and conclusive action of the council upon the petition. No right to the amount intended to be donated had accrued in favor of any one, or which could be enforced by any one.*" (Page 131.) (Our italics.)

Furthermore, in the recent case of *Pullin et al.* v. *Arnold et al.* (1954), 234 Ind. 13, 122 N. E. 2d 858,

this court citing the case of *Noble et al.* v. *City of Vincennes, supra,* held that in a ditch proceedings where final action was dependent upon the number of remonstrators to the action, property owners who had signed the petition could withdraw therefrom and join in the remonstrance against the proposed action during the period provided for remonstrance, even though a bond had been posted and viewers had been appointed for the drain in accordance with the petition.

Since in this case no action binding upon the township had been taken or could be taken with regard to the issuance of the proposed bonds except on the basis of the remonstrance filed, in my opinion, the principles above stated and the decisions of this court above cited require that the *will of all taxpayers* as expressed by their remonstrance to the proposed action be considered.

NOTE.—Reported in 159 N. E. 2d 576.